# Case No. 4,859.

## The FLASH.

[Blatchf. Pr. Cas. 183.] [1]

District Court, S. D. New York. June, 1862.

BETTS, District Judge. This schooner and cargo were seized, May 2, 1862, near the coast of South Carolina, off Caper's island, about fourteen miles northerly from Charleston, by the United States bark Restless, and were brought into this port May 12, thereafter, and libelled in this suit May 19. The attachment issued thereon was returned on the 10th of June thereafter, duly served, and no person appearing thereto, and proclamation having been made in open court, interlocutory judgment by default was rendered, according to the practice of the court.

On the evidence before the court it appears that the schooner was chased for five hours at sea by the capturing vessel, and ran into an inlet of the port of Charleston, and, not being able to escape, was run on shore, and set fire to, and abandoned by her own crew, who then all escaped on shore. The Flash was thereupon taken possession of by the boats of the capturing ship, and made subject to these proceedings.

The vessel, as appears by her registry, found on board at her capture, was an American bottom in build, but was registered at Nassau, N. P., in the Bahamas, November 24, 1860, to Mordecai Bethel and Silvanus Bethel, British subjects. Subsequent registers were indorsed upon the registry, April 21, 1862, and Robert H. Sawyer and Ramos A. Menendez were recorded as owners, and John Smith was registered as master, April 19, 1862. The shipping agreement, also found on board, was by the master and crew, for a voyage from Nassau to New York, and back to Nassau, and was dated April 16, 1862, and was between John Smith, master, and the crew named.

The clearance of the vessel and cargo, the latter consisting of salt, soap, oil and paper, were made at the port of Nassau on the 19th of April last; and two bills of lading and

---

[1] [Reported by Samuel Blatchford, Esq.]

one invoice of salt, and a letter of advice for the shippers to the consignee, were on board of the vessel at the time of her arrest. The documentary proofs thus found evince an honest voyage from a neutral port to one of our own ports, with a lawful cargo, in a legal trade.

Upon proof that none of the company of the captured vessel had been arrested on her seizure, or could be produced in court as witnesses in this suit, the court, on motion of the district attorney, ordered that the prize-master, Charles Smith, be examined as a witness in the cause, before the prize commissioners, in preparatorio. He says that he is a citizen of the United States, and was present at the capture of the schooner Flash and cargo; that she was, at the time, attempting to enter the port of Charleston, which was then under blockade; that, when first seen, she was heading off; that she then altered her course inward, and was evidently bound into the port; that she was fired at, and struck in the sails, and was then run on shore, set fire to, and abandoned by her crew in a small boat; and that they took with them all her papers, except her log-book.

Before the close of the proceedings, the master and mate and one seaman of the crew having been sent to this port on board of a United States vessel, were produced as witnesses by the district attorney, and were examined in preparatorio before the prize commissioners. The master and mate testify that the vessel was owned and laden at Nassau, by British subjects, and was destined for Charleston, if she could get into that port, otherwise, to New York; that she had got inside of the blockading vessels before she was run ashore, and had broken the blockade; and that the cargo was to be delivered at Charleston for the account of the shippers. The master of the vessel says that he knew, and that he supposed the owners also knew, of the blockade; and that when they left the vesel they took with them the log-book and all the ship's papers on board, which are now in the hands of the prize commissioners. The seaman Fry says that he supposed the voyage was to New York, according to the shipping agreement.

The evidence is thus made full and satisfactory, that the voyage was undertaken and prosecuted until the capture of the vessel with the intention, on the part of the master and owners, to violate the blockade of Charleston, knowing it to be in force. Accordingly, the vessel and cargo are condemned as forfeited to the libellants.